IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HAROLD L. DORTCH,                      )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )    CASE NO. 2:20-CV-334-MHT-CSC
                                       )         (WO)
                                       )
PATRICE RICHIE JONES, *et al.*,        )
                                       )
            Defendants.                )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint, as amended, filed on May 20, 2020, by Harold L. Dortch, an indigent state inmate.  (Docs. 1).[2]  In his amended complaint, the Plaintiff alleges that Defendant Warden Patrice Jones failed to protect him from an assault on August 1, 2020, by failing to ensure correctional officers' presence in the dorm.  He further alleges that she treated him with deliberate indifference by returning him to general population following the assault and failing to ensure Dr. Saddiq sent him to a free-world doctor for surgery.  Finally, he claims that she has refused to transfer him to another facility and instead returned him to general

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2]By Order dated September 24, 2020, the Court granted the Plaintiff's motion to file an amended complaint.  He was advised in this Order that this complaint would supercede his original complaint.  (Doc. 20).  On September 24, 2020, Plaintiff filed an amended complaint.  (Doc. 21).

population at Bullock Correctional Facility in retaliation for his prior lawsuits against her. (Doc. 21 at pp. 3-4).  He also alleges that Defendant Commissioner Jefferson Dunn is liable to him because he is "responsible for all operations" of the Department of Corrections, including Bullock Correctional Facility.  (Doc. 21 at p. 2).  Subsequently, Dortch filed additional amended complaints alleging that Defendant Sergeant Johnson violated his constitutional rights because he would not allow Plaintiff to retrieve his inmate mail and he intentionally tripped the Plaintiff in December, 2020.  (Docs. 43 and 48).  He seeks monetary damages and declaratory and injunctive relief.  (Docs. 21, 39, 43 and 48).  He does not state whether he sues the Defendants in their individual or official capacities. *Id.*

The Defendants filed a special report. (Doc. 61). This special report included relevant evidentiary materials in support of the report, specifically affidavits and prison documents addressing the claims presented by Dortch.  In these documents, the Defendants deny they violated Dortch's constitutional rights. *Id.*

After reviewing the special reports and exhibits, the court issued an order on April 6, 2021, requiring Dortch to file a response to the Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 62).  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for

2

the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 62 at pp. 2-3). Dortch filed a response to this order.  (Doc. 63).  Pursuant to the directives of the order entered on April 6, 2021, the court now treats the Defendants' special report as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendants.

## II.  SUMMARY JUDGMENT STANDARD

To survive the properly supported motion for summary judgment submitted by Defendants, Plaintiff must produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the evidentiary materials

before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc*., No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (Citation and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.")

Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Dortch has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the Defendants.

## III. FACTS

On August 1, 2020, Plaintiff was attacked by fellow inmates between 8 p.m. and 9 p.m. while he was in his dorm taking aftercare. (Doc. 61-1 at p. 1). Dortch claims that there were no correctional officers in the dorm when he was assaulted. (Doc. 21). At the time of the assault, Basic Correctional Officer Lakeia James was assigned as J Dorm Rover, and around 9:30 p.m. she observed Dortch with blood on his clothes. (Doc. 61-1 at p.1). She immediately reported the incident to Lt. Bryant Robbins, who reported to J2 Dormitory and took Dortch to the healthcare unit where he was seen by LPN Anna Stewart at 9:35 p.m. *Id.* About 10:15 p.m., Plaintiff was life flighted to Jackson Hospital for multiple stab wounds. *Id.*

Upon questioning by Lt. Robbins, Plaintiff reported that he and inmate Danny Cheatham argued because Cheatham walked around his bed assignment, and that inmate Cheatham stabbed him. *Id.* Lt. Robbins interviewed and searched inmate Cheatham, but no weapon was recovered. Following a medical assessment, Cheatham was processed into restrictive housing pending a disciplinary for assault on an inmate with a weapon. Following the disciplinary process, Cheatham was transferred to Donaldson CF on

August 28, 2020, with a custody level increase and an enemy validation.  (Docs. 61-1 at p. 4 and 61-2 at pp. 1-2). Plaintiff returned to Bullock from Jackson Hospital on August 13, 2020. (Doc. 21 at p. 3; 61-4 at p. 119).  On October 14, 2020, Dortch requested a transfer to general population and stated that he did not feel he was in danger by returning to Bullock's population.  (Docs. 61-1 at p. 3; 61-2 at p. 2).

Plaintiff claims that Defendant Warden Patrice Jones failed to protect him from an assault on August 1, 2020, by failing to ensure correctional officers' presence in the dorm.  He further alleges that she treated him with deliberate indifference by returning him to general population following the assault and failing to ensure Dr. Saddiq sent him to a free-world doctor for surgery.  Finally, he claims that she has refused to transfer him to another facility and instead returned him to general population at Bullock in retaliation for his prior lawsuits against her.  (Doc. 21 at pp. 3-4).  He also alleges that Defendant Commissioner Jefferson Dunn is liable to him because he is "responsible for all operations" of the Department of Corrections, including Bullock Correctional Facility. (Doc. 21 at p. 2).  Also, Plaintiff claims that Defendant Sergeant Johnson violated his constitutional rights because he would not allow Plaintiff to retrieve his inmate mail and he intentionally tripped the Plaintiff in December, 2020.  (Docs. 43 and 48).

6

## IV.  DISCUSSION

## A.    ABSOLUTE IMMUNITY

To the extent Plaintiff lodges claims against the Defendants in their official capacities and seeks monetary damages, these Defendants are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id.*  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.1990)).  In light of the foregoing, all Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).  Accordingly, all claims against Defendants in their official capacities for monetary damages are due to be dismissed.  The Court will now turn its attention to Plaintiff's claims against Defendants in their individual capacities for both monetary damages and injunctive relief.[3]

## B. RESPONDEAT SUPERIOR

The Plaintiff makes no specific claims against Defendant Commissioner Dunn. Rather, he claims that Defendant Dunn is liable to him for the actions of Defendants

---

[3]The court has previously denied the Plaintiff's request for a preliminary injunction based upon claims against Defendant Sergeant Johnson. (Docs. 55 and 57).

Warden Jones and Sergeant Johnson because he is "responsible for all operations" of the Department of Corrections and Bullock Correctional Facility.  (Doc. 21 at pp. 2).  Also, Plaintiff generally alleges that Defendant Warden Jones is liable to him because she is "responsible for the operation of Bullock and for the welfare of all inmates in that prison."  *Id.*  Specifically, he alleges that Defendant Warden Jones failed to protect him from attack by gang-involved inmates because she failed to ensure correctional officers were present in the dorm.  (Doc. 21 at p. 3).  Additionally, he claims that Warden Jones treated him with deliberate indifference by failing to ensure Dr. Saddiq sent him to a free-world doctor for surgery and retaliated against him by failing to transfer him to another facility.  (Doc. 21 at p. 4).

The law is well established; supervisory officials cannot be held liable in §1983 actions under any theory of respondeat superior or vicarious liability.  *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994).  Thus, to the extent Plaintiff seeks to hold Warden Jones and Commissioner Dunn liable for treatment provided by Dr. Siddiq, and any delay resulting in the process, he is likewise entitled to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on

medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Furthermore, to the extent Plaintiff claims that Warden Jones and Commissioner Dunn, exerted some control over the manner in which Dr. Siddiq rendered such treatment, or that either exerted some control of the manner in which Defendant Johnson or any other correctional officer performed their duties affecting Plaintiff, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability]. . . .  A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties.  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation and parentheses omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  Thus, liability for actions of Dr. Siddiq, Defendant Johnson, or any other correctional officer could attach to Warden

Jones or Commissioner Dunn, only if Jones or Dunn "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

The record is clear that Warden Jones and Commissioner Dunn, did not personally participate or have any involvement, direct or otherwise, in the medical treatment provided to Plaintiff by Dr. Siddiq.  (Docs. 61-2, 61-4 and 61-7).  Warden Jones testified that immediately following the assault on August 1, 2020, Plaintiff was taken to the healthcare unit by correctional officers and examined by Anna Stewart, LPN.  (Doc. 61-2).  Indeed, the medical records before the court demonstrate that Dr. Siddiq, and other medical personnel, made all decisions relative to the treatment provided to Plaintiff.  (Doc. 61-4).  Further, the record is clear that Commissioner Dunn had no involvement in the day-to-day operations of Bullock Correctional Facility.  (Doc. 61-7).  Also, the record demonstrates that Warden Jones did not have personal knowledge of the actions which form the claims against Sergeant Johnson (Doc. 61-2 at p. 2) and that Plaintiff signed a Release of Liability to return to general population on October 14, 2020.  *Id.*

In light of the foregoing, Warden Jones and Commissioner Dunn can be held liable for decisions of Dr. Siddiq, the actions of Sergeant Johnson or any other correctional officer, if they undertook actions which bear a causal relationship to the purported violation of Plaintiff's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of Warden Jones and

the Commissioner Dunn, Plaintiff must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] puts [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [the correctional defendant] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).

The record before the court contains no probative evidence to support an inference that Warden Jones or Commissioner Dunn, directed Dr. Siddiq or any correctional officer to act unlawfully or knew they would action unlawfully and failed to stop such action. In addition, Plaintiff has presented no evidence of obvious, flagrant, or rampant abuse of continuing duration regarding his medical or other treatment in the face of which Defendants Warden Jones or Commissioner Dunn failed to take corrective action. Accordingly, the court concludes that each of Plaintiff's claims premised upon respondeat superior is due to be dismissed and Commissioner Dunn is due to be dismissed as a party to this action. The court will now address the remaining claims against Defendant Warden Jones and Defendant Sergeant Johnson.

### C.   DELIBERATE INDIFFERENCE

1. **Standard of Review.**   "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).   Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.   *Id.* at 828.   A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."   *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).   "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.   "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . .   They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."   *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted).   The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's

safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective

14

elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective

knowledge cannot serve as the basis for a claim of deliberate indifference. . . .   Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).   Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).   Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*.   Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted).   In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk.   *Farmer*, 511 U.S. at 837.

## 2.   Claims against Warden Jones

Dortch alleges that Warden Jones failed to protect him from attack by gang-affiliated inmates on August 1, 2020, because there was "no officer in the dorm." (Doc. 21 at p.).   Warden Jones testified that at the time of Plaintiff's assault on August 1, 2020, Basic Correctional Officer Lakeia James was assigned as J-Dormitory Rover and that

around 9:30 p.m. Officer James observed Dortch with blood on his clothes.  She reported the incident to Correctional Lieutenant Bryant Robbins who responded to Dorm J and escorted Dortch to the health care unit where he was seen by Anna Stewart, LPN at 9:35 p.m. (Doc. 61-2 at p. 1).

Dortch also alleges that Warden Jones failed to protect him from future harm by placing him in general population following the August 1, 2020, assault and refusing to transfer him to another facility.  (Doc. 21 at p. 4).  However, Warden Jones testified that the inmate suspected of the assault on Dortch was processed into the Restricted Housing Unit on August 2, 2020, and on August 28, 2020, after completion and approval of custody increase and enemy validation, was transferred to William E. Donaldson Correctional Facility.  (Doc. 61-2 at p. 1).  She further testified that on October 14, 2020, Dortch signed a Release of Liability form and willingly returned to general population. Since that date he has remained in general population without incident, has no enemies in Bullock's general population unit, and has addressed no correspondence to her concerning a fear for his safety in general population.  (Doc. 61-2 at p. 2).

To survive the properly supported motion for summary judgment filed by the Defendant, Dortch must first demonstrate that an objectively substantial risk of serious harm existed to him and that Warden Jones "disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (Citation omitted).  If he establishes these objective elements,

Dortch must then satisfy the subjective component.  This requires Dortch to show that Warden Jones "subjectively knew that [he] faced a substantial risk of serious harm . . .[and] both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "**particular threat or fear** *felt by [the] [p]laintiff*."  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference."  *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Plaintiff fails to allege, much less offer any proof, that Warden Jones was aware of any threat to him posed by specific inmates at the time of the assault or that any threat existed to Plaintiff upon his return from Jackson Hospital, which she ignored.  *See*, *Johnson*, 568 F. App'x at 722 (holding that complaint properly dismissed because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attacker].");  *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (holding that where plaintiff did "not identif[y] any specific 'serious threat' from [inmate attacker]" or report any such threat to the defendants, mere "fact that [attacker] was a

'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'")   Moreover, the undisputed evidence demonstrates that the inmate charged with assault against Dortch was immediately removed from contact with Dortch and was transferred away from Bullock.  Finally, Dortch was returned to general population in Bullock Correctional Facility upon his own request and has resided there safely without complaint or injury.  Accordingly, summary judgment is due on Plaintiff's failure to protect claims against Warden Jones.

### 3.   Claims against Sergeant Johnson

Dortch claims that Defendant Sergeant Johnson intentionally tripped him in December, 2020 and that this conduct violated his constitutional rights to be housed safely.  (Doc. 43).  Defendant Johnson denies this occurred.  Even accepting Plaintiff's version of the facts, as the court must on summary judgment, the court concludes that this claim premised upon Sergeant Johnson's deliberate indifference to Dortch's safety fails because Plaintiff failed to demonstrate that Defendant Johnson "disregarded …[a] known risk by failing to respond to it in an objectively reasonable manner."  *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (Citation omitted).  Moreover, Plaintiff has failed to demonstrate that Sergeant Johnson "subjectively knew that [he] faced a substantial risk of serious harm . . .[and was] both …  aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. (internal citation omitted).  Indeed, the Plaintiff fails to allege facts sufficient for the

court to conclude that this alleged act was performed intentionally by Defendant Johnson or that any injury resulted to Plaintiff of which Defendant Johnson was aware and disregarded.  Moreover, the Plaintiff has failed to demonstrate that the single isolated incident of Defendant Johnson allegedly tripping Plaintiff has created a fear of future risk of harm to Plaintiff by Defendant Johnson.  Accordingly, Defendant Johnson is due summary judgment on this this claim.

### D.  ACCESS TO COURTS

Dortch also claims that Defendant Sergeant Johnson refused to allow him access to his legal mail.  The United States Supreme Court has held that a state inmate has the right of access to the courts to file a writ of habeas corpus.  *Ex Parte Hull,* 312 U.S. 546, 549, 61 S. Ct. 640, 642, 85 L. Ed. 1034 (1941).  This claim was later extended to claims filed under 42 U.S.C. § 1983 seeking relief for deprivation of basic constitutional rights. *Wolff v. McDonnell,* 418 U.S. 539, 579 (1974).  Indeed, within these contexts, access to the courts has been defined as "the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty, or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters."  *Hatfield v. Bailleaux,* 290 F. 2d 632, 637 (9th Cir. 1961).  However, Plaintiff's allegations fail in the face of his demonstrated ability to effectively litigate this and several other actions in this court while housed at Bullock

Correctional Facility.  *See Dortch v. Crawford,* 20-cv-293-MHT-CSC (M.D. Ala. April 30, 2020); *Dortch v. Parker,* 20-cv-321-WKW-CSC (M.D. Ala.  May 14, 2020); *Dortch v. Boynes,* 2:2021-cv-381-WKW-KFP (M.D. Ala. May 26, 2021); *Dortch v. Harris,* 2:2021-cv-512-RAH-SMD (M.D. Ala. August 2, 2021); *Dortch v. Griffin,* 2:21-cv-546-WHA-JTA (M.D. Ala. August 16, 2021).  Indeed, the dockets in the instant action and those listed above, demonstrate that Plaintiff filed numerous documents including affidavits, briefs and additional evidence to support his claims in these cases.  Thus, the court concludes Plaintiff's claim that Defendant Johnson has deprived him of access to the courts fails on summary judgment.

### E. RETALIATION

Plaintiff alleges that Defendant Warden Jones retaliated against him for filing lawsuits against him by placing him back in general population because she wanted him to get hurt and by failing to transfer him to another facility.  (Doc. 21 at p. 3).  He also alleges that Defendant Sergeant Johnson retaliated against him for filing lawsuits by tripping him and refusing him access to his mail.  (Doc. 43 at p. 2).  To proceed on a claim for retaliation and withstand the entry of summary judgment, the Eleventh Circuit has held that

> "an inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)."

*Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred.  *Smith*, 532 F.3d at 1278-1279 citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct ... was a 'motivating factor'" behind the adverse action of the defendant.  *Mt. Healthy*, 429 U.S. at 287.  Merely alleging the ultimate fact of retaliation, however, is insufficient.  *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Taking the Plaintiff's allegations as true, as the court must on summary judgment, the court concludes Dortch fails to state a claim for retaliation based upon Warden Jones' failure to transfer him to another facility and ultimate return of him to population at Bullock because the undisputed evidence demonstrates that on October 14, 2020, Dortch signed a Release of Liability form and willingly returned to general population.  Since that date he has remained in general population without incident, has no enemies in Bullock's general population unit, and has addressed no correspondence to Warden Jones concerning a fear for his safety in general population.  (Doc. 61-2 at p. 2).  Accordingly,

the court concludes Plaintiff fails to demonstrate that Defendant Jones intended to retaliate against Plaintiff when she returned him to general population because of Plaintiff's willingness and desire for return to general population. (61-1 at p. 3).

Furthermore, the court also concludes Dortch's retaliation claims based on his allegation that Sergeant Johnson tripped him and refused him access to his legal mail in retaliation for filing lawsuits likewise fail. Indeed, the undisputed evidence demonstrates Plaintiff filed five lawsuits, in addition to the instant action, while housed at Bullock Correctional Facility. *See Dortch v. Crawford,* 20-cv-293-MHT-CSC (M.D. Ala. April 30, 2020); *Dortch v. Parker,* 20-cv-321-WKW-CSC (M.D. Ala. May 14, 2020); *Dortch v. Boynes,* 2:2021-cv-381-WKW-KFP (M.D. Ala. May 26, 2021); *Dortch v. Harris,* 2:2021-cv-512-RAH-SMD (M.D. Ala. August 2, 2021); *Dortch v. Griffin,* 2:21-cv-546-WHA-JTA (M.D. Ala. August 16, 2021). Thus, the Plaintiff has failed to demonstrate that the alleged retaliation has deterred him from exercising his right to file legal actions alleging his constitutional rights have been violated by state actors at Bullock Correctional Facility. Accordingly, summary judgment is due to be granted on Plaintiff's clams of retaliation against Defendants Warden Jones and Sergeant Johnson.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The Defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the Defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **May 15, 2023** the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 1st day of May 2023.


   /s/   Charles S. Coody                              
      UNITED STATES MAGISTRATE JUDGE